**CITY OF AUSTIN, Appellant,**

v.

**Valcie C. WILLIAMS, Appellee.**

**No. 11667.**

Court of Civil Appeals of Texas.

Austin.

April 2, 1969.

Rehearing Denied April 23, 1969.

Glenn Brown, City Atty., H. Glenn Cortez, Associate City Atty., R. L. (Bob) Andrews, Jr., Asst. City Atty., Long, Aronson & Coleman, Austin, for appellant.

Garey, Colbert & Kidd, Joe Colbert, Austin, for appellee.

HUGHES, Justice.

This is a workmen's compensation case in which the City of Austin, appellant, and Valcie C. Williams, appellee, stipulated that the judgment of the trial court against appellant had been satisfied except to the extent of $1,250.00 which sum was the difference between the amount awarded appellee as unpaid workmen's compensation benefits and the lesser amount of such benefits which would have been awarded had the trial court admitted evidence that surgery on appellee would have had beneficial effects had it been performed.

While the case was before the Industrial Accident Board the City filed what it denominated a "Demand for Surgical Op-

eration" and its "Tender and Demand for Surgical Operation and Motion for Medical Examination Order," the latter instrument containing an admission of liability as to which no complaint is made. Accompanying these documents were six medical reports concerning appellee. Thereafter the Board appointed Dr. Claude Pollard, Jr. as medical examiner to examine appellee. Dr. Pollard, following his examination, filed a report with the Board. We copy from Dr. Pollard's report:

"1. Probable Chronic Osteoarthritic Proliferation Lesion on Right Side at L4–L5 Facet Level.

2. Possible Degenerative Lumbar Disc disease, Right Side, L4–L5.

*Recommend:*

A lumbar and lower thoracic myelogram is recommended to gain additional information relative to the lesion in the low back region at the L4–L5 level on the right side. The status of the lumbar discs may be evaluated by such procedure and decision reached relative to advisability of surgery at this time or in the future. No urgency is present regarding surgical treatment of the lesion and the x-ray appearance is not one of a benign or malignant tumor so that biopsy does not appear urgent unless the size of the lesion increases. If the myelogram shows evidence of a lumbar disc lesion, then decision regarding surgical treatment would be determined by the patient's condition and the severity of symptoms present. The patient has been disabled for his usual type occupation and if conservative treatment is necessary, consideration may be given for admission of the patient to Brackenridge Hospital for intensive physical therapy over a period of approximately 2 weeks. He is advised to have the back brace adjusted so that it fits properly and he may use it for support of the low back region."

Following receipt of this report, the Board refused to order appellee to submit to surgery. The Board thereafter made its final award from which appellee appealed to the trial court.

It appears that appellant paid appellee maximum compensation benefits and furnished medical care from the time appellee lost time from work until July 8, 1968.

Appellant "concedes the good-faith disposition by the Board and its justification. But appellant claimed the right to try to prove by the preponderance of evidence that an admirably cautious Board conclusion was in error.

By its only point, the City contends that under this record it was entitled to show that an operation on appellee, if performed, would have been beneficial, and it offered evidence to this effect.

We believe that the opinion of this Court in City of Austin v. Webster, 424 S.W.2d 720, writ ref. n. r. e., writ of error denied 393 U.S. 214, 89 S.Ct. 396, 21 L.Ed.2d 357 (1968), opinion by Associate Justice O'Quinn, is decisive of the question presented, and contrary to the position of the City. In that case the Board denied a demand for surgery. On appeal to a district court the Trial Judge, the same Judge who tried this case, refused to permit the City to introduce evidence of the safety, advisability and probable beneficial effects of surgery upon the employee. In sustaining this ruling we stated:

"We consider the first point of error controlled by the holding of the Supreme Court in Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521, and case law stemming from that decision. In the Seelbach case the Supreme Court construed the surgery sections of Article 8306 (Sections 12b and 12e), Vernon's Ann.Civ.St., to give the Industrial Accident Board exclusive power to order or supervise an operation or to direct a medical examination for the purpose of determining the advisability of an operation. The courts were held not to be clothed with such powers. 'Where the statute directs that action

be taken in a certain way,' the Court declared, 'it may be performed in no other manner.' 339 S.W.2d 521, 523, col. 2.

The City of Austin contends that it complied with the steps required of it to invoke the action of the Industrial Accident Board and to lay a predicate for the introduction of evidence in trial court as to beneficial effects of surgery. While there may be some doubt that the admission of liability was sufficient, we do not find it necessary to decide this question. Assuming that all steps were timely and properly taken by the City of Austin, the Board did not order an operation and put the claimant to an election to undergo surgery or not. The Board denied the demand for surgery. Similar facts were before the Supreme Court in Garcia v. Travelers Insurance Company, 365 S.W.2d 916 (Tex.1963) in which it was held that neither the trial court nor the court of civil appeals could direct and supervise an operation. The insurer was not entitled to prove the beneficial effects of surgery.

In Houston Fire and Casualty Insurance Company v. Dieter, 409 S.W.2d 838 (Tex.1966) the Supreme Court distinguished cases in which medical testimony may be tendered asserting beneficial effects of 'unperformed surgery,' as in the Seelbach and Garcia cases, from those cases in which 'surgical procedures have been utilized.' In the Dieter case it was held that results of an operation were properly the subject of proof. In such case, the Court pointed out, ' * * * the trial court is not being called upon to order or supervise surgery or act in any respect as an administrative board.' 409 S.W.2d 838, 841, col. 1.

In the Dieter case the Supreme Court reviewed the problem presented in the Seelbach case, which the Court observed to be 'two-fold: first, the obvious speculative element of opinion testimony as to the possible results of surgery which

had not occurred and might never occur; and second, the undesirable result which was described as being "tantamount to applying the provisions of §§ 12b and 12e in the trial court."' 409 S.W.2d 838, 840, col. 2.

The question of an operation must be decided while the case is before the Industrial Accident Board. Consolidated Underwriters v. Foster, 383 S.W.2d 829, Tex.Civ.App., Tyler, writ ref. n. r. e.; Texas Employers' Ins. Assn. v. Ellis, 365 S.W.2d 676, Tex.Civ.App., Texarkana, writ ref., n. r. e. The inquiry at the trial of a workmen's compensation case is the extent of incapacity of the injured employee at that time. Houston Fire and Casualty Insurance Co. v. Dieter, supra.

Assuming as we have that the City of Austin made timely and valid admissions of liability and demand for surgery before the Board, it is clear that the Board had before it no evidence that an operation would cure or improve Webster's condition. The Board decided the question of operation, or the need for an operation, when it denied the demand for surgery. Evidence in the trial court concerning beneficial effects of an operation was inadmissible. Consolidated Underwriters v. Foster, supra; Aetna Casualty and Surety Company v. Depoister, 393 S.W.2d 822, Tex.Civ.App., Corpus Christi, writ ref., n. r. e.

It would appear that the surgery sections of Article 8306 were meant to afford an administrative means of inquiring into the advisability of an operation to cure or relieve the effects of an injury to the workman. Under this statute the Board by unanimous action may order an operation when it is advisable. We think it was not contemplated that the insurer would be permitted, by admitting liability and demanding surgery before the Board, to prove in court by 'conjecture and opinion evidence' that the extent and duration of

the claimant's disability and his incapacity might be reduced through surgery, after the Board has refused to order an operation. Seelbach case, 339 S.W.2d 521, 524, col. 2.

The trial court properly excluded all evidence of the safety, advisability and probable beneficial effects of surgery upon the claimant's back. Appellant's first point is overruled."

We believe what. was stated there to have been the law then. We believe it is the law now. The City has cited no case to the contrary. Although it cites and discusses cases which it believes to support it in principle it cites no case which has been decided subsequent to our opinion in Webster. We overrule the City's only point.

While not made the subject of a point the City has an argument to the effect that if we conclude that the proffered testimony is inadmissible then we have unconstitutionally denied it due process and equal protection of the law.

The City has voluntarily become an insurer under the Workmen's Compensation Law. We quote the caption of an ordinance by which this was accomplished:

"AN ORDINANCE

An ordinance adopting and making applicable to the City of Austin the provisions of state law relating to workmen's compensation insurance for cities, towns, and villages; providing that the City of Austin shall be self-insuring; providing for notices of such action to be given; providing for the administration thereof; establishing the City of Austin workmen's compensation account; and declaring an emergency."

For the City to contend that the provisions of this law which defines its liability as an insurance carrier under the Workmen's Compensation statutes are unconstitutional is the equivalent of an insurance company contending that the provisions of a policy issued by it were unconstitutional. This would not be tolerated. Having undertaken of its own volition to be an insurance carrier under this law, the City cannot question its constitutionality in a suit against it under such law.

In Oilmen's Reciprocal Association v. Franklin, 116 Tex. 59, 286 S.W. 195, the Court in discussing the Workmen's Compensation Statutes stated:

"In becoming a 'subscriber' under the law, the employer claims its benefits and thereby voluntarily yields rights which he might otherwise have in substitution for those there prescribed, and by entering or remaining in the service of an employer who has thus become a 'subscriber' the employe voluntarily effects a comparable change of position. As to a person, etc., who may become an 'insurer,' the statute itself, of course, is the source of all rights claimable, and the subjection of those rights to the remedies prescribed rests entirely in volition. As between the three persons affected in any case new rights, new duties and appropriate new remedies come into existence by operation of the law."

In Huffman, Sr. v. Southern Underwriters, 133 Tex. 354, 128 S.W.2d 4, the Court said:

"The constitutionality of the Workmen's Compensation Law is sustained on the theory of tripartite agreement between employer, employee, and the insurance carrier. Their legal relation under this statute is contractual."

See also the opinion of this Court in Beneficial Finance Co. of Midland v. Miskell, 424 S.W.2d 482, writ ref. n. r. e. (1968).

The judgment of the trial court is affirmed.

Affirmed.